UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARNEST A. BRYANT, individually, )
and as parent and next friend of minor, )
CHORI BRYANT, )
)
                        Plaintiffs, )
)
    vs. )      06 C 5697
)
OAK FOREST HIGH SCHOOL DISTRICT 228, )
BOARD OF EDUCATION, DAVID WILSON, )
KEVIN DONEGAN, DAVID CORBIN, )
DR. RICHARD MITCHELL, et al., )
)
                        Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

      This matter comes before the court on the motion of Defendant Dr. Richard Mitchell ("Mitchell"), superintendent of the Bremen High School District 228, to dismiss Counts I and II of the Complaint of Plaintiff Earnest Bryant ("Earnest"), individually and as next friend of Plaintiff Chori Bryant ("Chori"), a minor. For the reasons set forth below Mitchell's motion to dismiss is granted in part and denied in part.

## BACKGROUND

      Because this case comes to us in the context of a motion to dismiss, we take all well-pleaded facts alleged in the complaint as true. *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957). As the Bryants appear *pro se*, we will construe their complaint liberally. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

Chori enrolled as a freshman at Oak Forest High School ("OFHS") in August of 2004. On October 4, 2004, Chori was written up on a disciplinary referral for gross misconduct and helping to antagonize a fight between two other individuals. The Bryants allege that this fight was witnessed by a large group of students, the majority of whom were white. Chori, who is black, and two other minority students were given referrals and awarded detention as a result of the incident.

According to the Bryants, this event began a series of efforts by OFHS Dean of Students Kevin Donegan ("Donegan") to harass Chori and write him up for disciplinary referrals in an effort to get him expelled. In November 2005, David Wilson ("Wilson"), an OFHS employee, allegedly refused to investigate Earnest's complaints about Donegan's actions, and referred him to "the district." Furthermore, the Bryants allege that in April 2006, Wilson, Donegan, and David Corbin, another employee of the District, falsely questioned Chori's residency and demanded excessive proof before Chori was allowed to register for school in August of that year. After the Illinois State Board of Education forced OFHS to register Chori for the 2006-2007 school year, the Bryants allege that OFHS and the District refused to let him play football while they investigated his residency. The Bryants attribute this treatment to Chori's race.

The Bryants' direct allegations against Superintendent Mitchell are as follows. The Bryants allege that Earnest wrote more than four letters to the District requesting that they address the alleged racial discrimination against Chori - they does not specify, however, to whom those letters were sent. The Bryants contend that none of their complaints were acted upon by Mitchell or the District. Furthermore, Earnest alleges that he spoke with Defendant Dr. Richard Mitchell on two occasions. The two met in October 2004 when Earnest alleges he apprised Mitchell of the situation concerning Chori's discipline referral, threats of expulsion, and his impression that he was singled out because of his race. Earnest alleges that Mitchell failed to act in response to his complaints. In August of 2006, Mitchell allegedly asked Earnest, "wouldn't Chori Bryant feel better at another school?"

On March 15, 2007, Earnest filed suit on his own behalf and as next friend of Chori in this Court against Wilson, Donegan, Mitchell, Corbin, and the Board of Education of Bremen High School District 228 ("the Board").[1] The Bryants' amended complaint purports to be brought under "42 U.S.C. 1964" and alleges "racial discrimination and deprivation under the color of law of Plaintiff's rights as secured by the Constitution." Count I of the Bryants' amended complaint alleges that Chori was

---

[1] The Bryants named as Defendants "Oak Forest High School, District 228, Board of Education." According to the Answer filed by Defendant Board of Education, Oak Forest High School is part of Bremen High School District 228 and governed by the Board of Education of Bremen High School District 228.

subjected to "disparate treatment" by the Defendants and denied his due process rights. Further, the Bryants allege that Defendants intentionally denied Chori "equal protection under the law," treated him differently from white students, and refused to address his complaints of discrimination or cease the discrimination. Count II alleges that Defendants' actions, taken on the basis of his race, denied Chori his constitutional rights. The amended complaint also contains state law claims for intentional infliction of emotional distress and liability for the Board under the doctrine of *respondeat superior*.

Pursuant to Fed. R. Civ. P. 12(b)(6), Mitchell moved to dismiss Counts I and II. Mitchell is not named in the remaining counts of the Bryants' amended complaint.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). The purpose of this minimum requirement is to provide the defendant with fair notice of the plaintiff's claim and the grounds upon which it rests. *Brown v. Budz,* 398 F.3d 904, 908 (7th Cir. 2005).

The court must consider a Rule 12(b)(6) motion to dismiss in the context of the liberal federal rules for notice pleading. *Hefferman v. Bass,* 467 F.3d 596, 598-99 (7th Cir. 2006). The claimant's factual allegations must be accepted as true and all

reasonable inferences shall be drawn in the plaintiff's favor. *Cole v. U.S. Capital,* 389 F.3d 719, 724 (7th Cir. 2004).

Recently, the Supreme Court clarified the general standards applied to a 12(b)(6) motion. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Under *Bell Atlantic,* the complaint must describe the claim "in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests…' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* at 1964-65. Finally, a complaint alleging violations of 42 U.S.C. § 1983, whether directed towards an individual or a municipality, is not subject to a heightened pleading standard of factual specificity. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 165, 170 (1993). Legal conclusions can suffice. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). However, even under the *Leatherman* standard, a § 1983 complaint against a municipality must put the municipality on notice of the nature of the claim. *Id*. With these standards in mind we consider the instant motion.

## DISCUSSION

Construing the Bryants' *pro se* complaint liberally, we interpret it as alleging violations of Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000(d),

as well as violations of Chori's rights under the Fourteenth Amendment to the U.S. Constitution which may be redressed pursuant to 42 U.S.C. § 1983.

**A. Title VI**

Mitchell's first challenge to the Bryants' amended complaint addresses Chori's claim under Title VI of the Civil Rights Act of 1964. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). Individuals cannot be liable under Title VI; instead, the appropriate party to be sued is the entity recieving federal financial assistance. *Smith v. Metro. Sch. Dist. Perry Township*, 128 F.3d 1014, 1018-19 (7th Cir. 1997) (only a grant recipient can violate Title IX); *see also Doe v. Smith*, 470 F.3d 331, 338 (7th Cir. 2006) (noting as that Title VI and Title IX "both condition...an offer of federal funding on a promise by the recipient not to discriminate" they are interpreted in the same manner). Accordingly, to the extent the Bryants' complaint states a claim under Title VI, Mitchell is not the appropriate defendant. Accordingly, Count I is dismissed as to Mitchell.

**B.     42 U.S.C. § 1983**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of "rights, privileges or immunities" secured to him by the

Constitution or laws of United States and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Smith,* 470 F.3d at 338.

The Bryants appear to be arguing that Mitchell is liable in his official capacity, as final policymaker for the Board, and in his personal capacity, as superintendent. A suit against Mitchell in his official capacity is not necessary, as it is simply a device for holding the governmental entity responsible for the alleged constitutional deprivation. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (noting that a suit against the mayor in his official capacity as well as the city was redundant because "the city is liable for the official actions of its senior policy-making official."); *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694 (1978) (municipalities may be held liable under § 1983 for the acts of a person with final policymaking authority). As the Bryants have also properly sued the Board, a suit against Mitchell in his official capacity is redundant and is dismissed. *Id.* Whether or not Mitchell was a "final policymaker" for the purposes of imposing liability on the Board, therefore, is an argument more properly raised by the Board and we will not consider it here.

Mitchell may nonetheless be held liable for his personal actions if those acts were taken in violation of § 1983. *Smith*, 470 F.3d at 340 (neither Title VI nor Title IX "shield[s] the malefactor from personal liability for his federal constitutional tort.") To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's

personal responsibility for the claimed deprivation of a constitutional right. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). The Seventh Circuit has explained that "an official satisfies the personal responsibility requirement if he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Id.*, 687 F.2d at 1005.

Mitchell first argues that Chori's allegations do not state legally cognizable claims of race discrimination for two reasons. First, Mitchell argues that his actions were not discriminatory on their face and not taken with discriminatory intent; instead, he argues that they were legitimate disciplinary and administrative measures. The question of Mitchell's intent is indisputably a question of fact. Thus, taking Chori's allegations as true, as we must for the purpose of this motion, we find he has adequately alleged that Mitchell treated him differently from white students on account of his race in violation of the equal protection clause.

Second, Mitchell argues that as Chori has no constitutionally protected property interest in playing football, any claim that he was deprived of that right should be dismissed. Chori can certainly allege that he was treated differently from other students when he was prohibited, allegedly on the basis of his race, from playing football.

However, Chori also argues that playing football confers educational and financial benefits upon a child and so should be considered a protected property interest. The Supreme Court and the Seventh Circuit have not yet ruled as to whether or not the right to play football is a protected interest. Property interests protected by Constitution "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). As the *Roth* court explained, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." In general, Illinois courts have not held that state law generally creates an entitlement to play football, or participate in any extracurricular activities, at the high school level. *See, e.g., Jordan ex rel. Edwards v. O'Fallon Tp. H.S. Dist. No. 203 Bd. of Educ.*, 706 N.E.2d 137, 140 (Ill. App. Ct. 1999). Chori has not pled any facts to raise his claim that had an entitlement to play football at OFHS above the speculative level. *See Bell Atlantic Corp.*, 127 S. Ct. at 1964-5. Accordingly, any claim that he was deprived of a protected property interest in playing football must fail.

Even assuming Chori has stated viable claims, Mitchell argues that he is shielded from liability by the doctrine of qualified immunity. Qualified immunity is an affirmative defense that protects government officials from liability for civil damages

when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts undertake a two-step inquiry to determine the applicability of qualified immunity. First, a court must determine whether the conduct as alleged violates a constitutional or statutory right. *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). If so, it must determine whether the right infringed upon was clearly established at the time of the alleged conduct. *Id.* The determination of whether the right allegedly infringed upon was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The relevant inquiry is whether a reasonable official, in the defendant's position, would understand that his conduct was clearly unlawful in the situation presented. *Id.*

As discussed above, Chori has alleged sufficient constitutional violations on the part of Mitchell to defeat the present motion. Our next inquiry, then, is whether the rights allegedly infringed upon were clearly established at the time of Mitchell's alleged conduct. The conduct at issue is Mitchell's failure to intervene or investigate with regard to Chori's claims of racial discrimination and harassment and any role in attempting to prevent Chori from attending school. In each instance, Chori alleges that these actions were taken because of his race or in contravention of established due process rights.

The right "not to be denied, discouraged, or intimidated from admission" to public school because of race is well established. *Wade v. Hegner*, 804 F.2d 67, 71 (7th Cir. 1986) (*citing, inter alia*, *Brown v. Board of Education*, 347 U.S. 483 (1954)). Equally as clear is the right to be free from racial discrimination at the hands of public institutions and employees. U.S. Const. Amend. 14; 42 U.S.C. 2000(d); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 237 (1995)(holding that "whenever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection.") Students' rights to procedural due process in connection with school discipline are equally clearly established. *Goss v. Lopez*, 419 U.S. 565, 581 (1975). While Mitchell cites *Tun v. Whitticker*, 389 F.3d 899, 903 (7th Cir. 2005) for the proposition that federal courts are reluctant to interfere in the disciplinary decisions of school officials, in *Tun,* the court determined that there was no constitutional violation and therefore refrained from overturning the school officials' decision.

As *Goss*, *Brown*, and *Wade* demonstrate, the administrative and disciplinary decisions of school officials are not entirely protected from scrutiny, especially when they are allegedly done with the intent to discriminate on the basis of race or when they are so arbitrary as to deprive a student of due process. Accordingly, at this stage in the

litigation, we are unable to say that Mitchell is protected by the doctrine of qualified immunity.

III. Tort Immunity Act

Mitchell also asserts that his actions in questioning Chori's residency are protected by the Illinois Governmental Employees Tort Immunity Act. Under the Act, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for his wrongful acts unless those acts are willful and wanton. 745 ILCS 10/2-201. However, Mitchell cannot be shielded from personal liability for violations of federal law by operation of a state law, because under the Supremacy Clause of the United States Constitution, federal laws preempt conflicting state laws. *See, e.g., Gibbons v. Ogden*, 22 U.S. 1, 3 (1824); *McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968).

IV. Punitive Damages

Mitchell also asks that we strike the Bryants' demand for punitive damages. Punitive damages are available in § 1983 cases only upon a showing of "evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others." *Kyle v. Patterson*, 196 F.3d 695, 697-98 (7th Cir. 1999) (noting that the decision to award punitive damages is generally made after the fact-finder reviews the entire record). The only reason Mitchell gives to justify the unavailability of punitive damages is his assertion that "the facts as alleged do not support that Dr. Mitchell acted

with an evil motive or intentionally disregarded plaintiffs' rights." This is not sufficient. As discussed above, questions of fact with respect to Mitchell's intent exist, and we will not at this time strike the Bryants' prayer for punitive damages.

## CONCLUSION

For the foregoing reasons, Mitchell's motion to dismiss is granted in part and denied in part. Count I is dismissed as pertains to Mitchell in its entirety. Count II is dismissed against Mitchell in his official capacity alone, but certain claims against him in his personal capacity in that count state a claim upon which relief may be granted.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   September 12, 2007